ELLIOTT *v.* GILCHRIST.

A mortgage of " a tract of land known as the M lot, bounded  . . .
    easterly by land of W," held to convey the land up to W's line,
    although a portion of it was known as the S lot.
A settlement of the boundaries of land included in a mortgage, made
    under circumstances which amount to a legal fraud on the part of the
    mortgagor, is not binding on the mortgagee.

BILL IN EQUITY, to foreclose a mortgage given to the plaintiff
March 29, 1879, by David Gilchrist, then the defendant's husband,
of lands described as follows:
    "A tract of land known as the 'Mowe lot,' bounded northerly
by the road . . . westerly by said Shaw farm, southerly by
the Webster pasture so-called, easterly by land of George Wilson
. . . containing fifty acres more or less."
    "Also one other lot situated in said Franklin, bounded on the
north by land of the late L. D. Stevens, on the west by . . .
the Peabody lot, on the south by land of David Gilchrist (the
grantor), on the east by land of Moses Morse, containing fourteen
acres more or less."

David Gilchrist died insolvent November 25, 1879, and the title to the land subsequently came to the defendant. The plaintiff had no knowledge of the situation, value, or boundaries of the land, and David gave her no information when the mortgage was made, except that contained in the mortgage, and the assurance that the security was ample. The boundaries of the first tract include the Shaw lot. By the second tract David intended the Twombly lot, the correct boundaries of which were as follows: North by the Peabody lot, east by land of the late L. D. Stevens, south by land of Moses Morse, and west by land of Ward & Pike. David owned no other lot which adjoined both the Peabody lot and the Stevens land.

In 1879 or 1880 the plaintiff placed her note and mortgage in the hands of B, an attorney, who made some inquiry regarding the location and value of the lands, and in consequence of the information received did not present the note to the commissioner for allowance. In September, 1884, B called upon the defendant's agent in regard to a foreclosure, and was informed by him that the description of the lands in the mortgage was not correct. To save the expense of foreclosure and to correct the mistakes, it was agreed that the defendant should quitclaim to the plaintiff by a proper description the lands covered by the mortgage; and September 13, 1884, the defendant executed, and through her agent delivered to B, her quitclaim of the Mowe lot (excluding the Shaw lot) and of the Twombly lot; and B, at her request, gave her a release or discharge from all further claim against the estate of David.

The agent was familiar with the lands and their boundaries. He understood that B had no knowledge regarding their proper description, and that he relied entirely upon the information which he (the agent) then communicated. He knew, but did not inform B, that the Shaw lot was included within the boundaries named in the mortgage. He supposed that the particular description was controlled by the words "Mowe lot," and that only the latter passed. He had no personal interest in the matter, and no intention to deceive. B, however, was deceived. He understood, and was reasonably warranted in understanding, from the agent's statements, that the "Shaw lot" was the correct name of the land styled "Wilson's" in the mortgage. He did not intend to release any land covered by the mortgage, or understand that he did, and would not have accepted the quitclaim if he had known or suspected that it did not convey all the lands described in the mortgage. He had no authority from the plaintiff except his general authority as her attorney.

The Mowe lot and the Twombly lot are not sufficient, but those lots and the Shaw lot are more than sufficient, to satisfy the mortgage debt.

Upon the question whether David did or did not intend to mort-

gage the Shaw lot, the finding is against the party upon whom rests the burden of proof.

The parties have leave to amend their pleadings, and to do any other thing necessary to warrant the relief to which they are entitled upon the foregoing facts.

*Daniel Barnard* and *Wm. L. Foster*, for the plaintiff.

*Frank N. Parsons*, for the defendant.

SMITH, J. The deed conveys a tract of land known as the "Mowe lot," bounded easterly " by land of George Wilson." The "Shaw lot" lies between the Mowe lot and the Wilson land, so that the inquiry is, whether the deed includes the Shaw lot. The other lines are the same, whether the easterly line is the Shaw lot or the Wilson land.

In giving construction to the deed, the evidence competent to be considered is the language of the deed and the surrounding circumstances at the time of its execution, including the situation of the parties and the object they had in view. And we think, upon all the evidence, the legal construction of the mortgage is, that it includes the Shaw lot. The boundaries include it. The presumption is, that David Gilchrist knew he owned the Mowe, Shaw, and Twombly lots, and their boundaries. It is more probable that he intended to include all the land west of the Wilson land, and extended his Mowe lot so as to include the Shaw lot, than that he intended to exclude the last-named lot when his description includes it. And it is more probable that he applied the Mowe lot name— the name of the larger lot—to both lots, than that, in describing the land he intended to convey, he passed over the Shaw lot, and bounded by a wrong monument. If the Shaw lot is excluded, the inconsistency of bounding the Mowe lot on the Wilson land cannot be explained, except upon the theory that a mistake was made. On the other construction there is no such inconsistency. The balance of probabilities on the evidence is, that the boundaries control.

If evidence of value is competent, it is almost conclusive that Gilchrist intended to include the Shaw lot, because his object in giving a mortgage was to give security. With the Shaw lot, the security is ample ; without it, it is not sufficient.

In taking the quitclaim deed and in giving the release, the case finds that the plaintiff's attorney was deceived, and that the deception was without fault or negligence on his part. This was such legal fraud as to set free the release and quitclaim deed.

The finding at the trial term in regard to the Twombly lot was warranted by the evidence, and no question of law is presented by the facts relating to that lot.

The plaintiff is entitled to a decree for foreclosure of the three

lots for the amount equitably due.  This involves an accounting for the rents and profits of the Mowe and Twombly lots received by the plaintiff.

*Case discharged.*

BLODGETT and CARPENTER, JJ., did not sit: the others concurred.